2012 WY 4

**BOARD OF PROFESSIONAL RESPONSIBILITY, Wyoming State Bar, Petitioner,**

v.

**D. Stephen MELCHIOR, WSB 5–2885, Respondent.**

No. D–11–0005.

Supreme Court of Wyoming.

Jan. 6, 2012.

**ORDER OF PUBLIC CENSURE**

MARILYN S. KITE, Chief Justice.

[¶ 1] **This matter** came before the Court upon a "Report and Recommendation," filed herein December 22, 2011 by the Board of Professional Responsibility for the Wyoming State Bar. The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent D. Stephen Melchior should be publicly censured for his conduct, which is described in the attached Report and Recommendation. It is, therefore,

[¶ 2] **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3] **ADJUDGED AND ORDERED** that D. Stephen Melchior shall receive a public censure for his conduct, and he shall be publicly censured in a manner consistent with the recommended censure contained in

the Report and Recommendation for Public; and it is further

[¶ 4] **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Mr. Melchior shall reimburse the Wyoming State Bar the amount of $2,372.89, representing the administrative costs incurred in handling this matter, as well as pay the administrative fee of $500.00. Mr. Melchior shall pay the total amount of $2,872.89 to the Clerk of the Board of Professional Responsibility on or before February 1, 2012; and it is further

[¶ 5] **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation, as a matter coming regularly before this Court as a public record; and it is further

[¶ 6] **ORDERED** that, pursuant to Section 4(c) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶ 7] **ORDERED** that the Clerk of this Court cause a copy of the Order of Public Censure to be served upon Respondent D. Stephen Melchior.

[¶8] **DATED** this 6th day of January, 2012.

By the Court:

/s/ MARILYN S. KITE
Chief Justice

**BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY**

**WYOMING STATE BAR**

**STATE OF WYOMING**

**In the matter of D. STEPHEN MELCHIOR WSB No. 5–2885, Respondent**

*Docket No. WSB 2011–031*

**REPORT AND RECOMMENDATION**

The Board of Professional Responsibility makes the following Report and Recommendation, with its findings of fact, conclusions of law, and recommendation to the Supreme Court of Wyoming:

**FINDINGS OF FACT**

1. Respondent is an attorney licensed to practice law in Wyoming since 1991.

2. In July of 2010, after Respondent's client represented to Respondent that she and her husband had reached an agreement regarding all matters relative to their divorce, Respondent filed a divorce complaint on behalf of his client against her husband, with the expectation that Respondent would subsequently be filing a signed copy of a Property Settlement Agreement that Respondent had prepared and understood reflected the agreement of the parties relative to all issues pertaining to the parties' divorce. After Respondent filed such divorce complaint on behalf of his client, the husband hired Cheyenne attorney Deborah Ford Mincer to represent him in the divorce. Ms. Mincer thereafter filed an answer and counterclaim on behalf of the husband, a copy of which was served upon Respondent.

3. In the course of the divorce case, Respondent made revisions to said settlement documents at his client's request, including to the property settlement agreement and a confidential financial affidavit in the husband's name. Respondent did not initially inform Ms. Mincer of these facts, nor did he initially provide Ms. Mincer with copies of the documents.

4. On or about February 7, 2011, the husband signed a stipulated property settlement, child custody and child support agreement (both redacted and unredacted versions), and a confidential financial affidavit, all of which were prepared by Respondent. The husband's lawyer, Deborah Ford Mincer, was not informed by Respondent that he had been making revisions to the parties' said settlement documents at his client's direction or that Respondent knew, based upon his client's representations to him, that the parties were meeting together on their own for

the purpose of trying to reach agreement relative to the terms of their divorce.

5. After the husband signed the documents, he called his lawyer, Deborah Ford Mincer, and told her he had signed some sort of agreement. Ms. Ford Mincer immediately advised Respondent not to file the agreement. and requested a copy of it.

6. On February 8, 2011, Respondent wrote to Ms. Ford Mincer and told her that her client had signed the stipulated divorce settlement, and that her client had also signed a financial affidavit. In Respondent's letter, he told Ms. Ford Mincer:

> My client has come to me several times in the last couple of weeks with edits to a proposed PSA [property settlement agreement] that it is my understanding the parties have been working off of. I made final edits to the PSA yesterday after my client came into my office and told me that [the husband] had just a few more changes before he would sign. Shortly after I presented a final edited version of such PSA to my client, she returned to my office with the PSAs (unredacted and redacted versions) bearing [the husband's] signatures. I also received a signed copy of [the husband's] Confidential Financial Affidavit. Rest assured that I would not have and will not file with the Court any of the documents that [the husband] has signed without first obtaining your approval or unless I receive an Order from the Court announcing that you no longer serve as [the husband's] attorney. This I have been clearly explaining to my client for the last several weeks.

7. In response to Respondent's February 8, 2011 letter, Ms. Ford Mincer instructed Respondent to have no communications with her client, not to obtain any additional documents from her client, and to file nothing that concerns her client. Respondent replied in an email dated February 9, 2011, in which he stated as follows:

> [I] told my client that I could not file any signed PSA or documents bearing [the husband's] signature without first providing you with a copy of the same for review

and not until you gave me the green light to do so; and my client told me that she communicated the same to [the husband] several times. That is how I operate. That is how I have always operated. That is how I will continue to operate.

8. Ten days later, on February 19, 2011, Respondent wrote to Ms. Ford Mincer:

> After giving the matter much thought, I am of the opinion that the documents our clients negotiated between themselves and which our clients signed ... constitute a valid and enforceable contract between the parties. I was not involved in the parties' settlement negotiations. My client provided to me fully executed documents. I had no communications with your client whatsoever about any aspect of the parties' divorce or their agreement, and never "negotiated" anything with your client.

9. On February 22, 2011, Respondent filed, on behalf of his client, a motion for order acknowledging as valid and enforceable the parties' settlement agreement.

10. On February 25, 2011, Ms. Ford Mincer submitted a complaint to Bar Counsel in which she alleged that Respondent had violated Rules 4.2 and 8.4 of the Wyoming Rules of Professional Conduct.

 11. Respondent has acknowledged that his conduct violated Rule 4.2 of the Rules of Professional Conduct for Attorneys at Law, which provides, "In representing a client, a lawyer shall not communicate [either directly or indirectly] about the subject of the representation with a person or entity the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Comment 3 to the Rule states, "The Rule applies even though the represented person initiates or consents to the communication. Regardless of who commences the communication, a lawyer must immediately terminate communication with a person if the lawyer learns that the person is one with whom communication is not permitted by this Rule." Comment 4 to the Rule states, "A lawyer may not make a communication prohibited by this Rule through the acts of

another." Respondent has acknowledged that he violated this Rule when he created and gave to his client a divorce settlement agreement and a confidential financial statement at a time when Respondent knew or reasonably should have known that there was a substantial risk that she would deliver them to the husband, whom Respondent knew was being represented by counsel.

12. Respondent has acknowledged that his conduct also violated Rule 8.4(d), which provides, "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." Respondent violated this Rule when he presented the divorce settlement agreement to the Court for enforcement after assuring Ms. Ford Mincer that he would not file the agreement without her approval, despite his client directing Respondent to do so.

13. Respondent has expressed remorse for the poor judgment he exhibited in violating the Rules of Professional Conduct as set forth herein, and has vowed not make similar mistakes in the future.

14. Respondent has agreed to the issuance of the following public censure:

Cheyenne attorney D. Stephen Melchior received a public censure from the Wyoming Supreme Court for violation of two separate Rules of Professional Conduct for Attorneys at Law. Melchior represented the wife in a divorce action in which the husband was represented by counsel. Prior to the husband's attorney entering her appearance as counsel for the husband, Melchior drafted certain documents, including a property settlement agreement. After the husband's attorney entered her appearance as counsel for husband, Respondent revised such settlement documents at the direction of his client gave them to his client at a time Melchior knew or reasonably should have known that there was a substantial risk that she would deliver them to the husband. Melchior did so without informing the husband's attorney of his actions. Melchior's conduct in this respect violated Rule 4.2, which pro-

vides, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person or entity the lawyer knows to be represented by another lawyer in the matter, [either directly or indirectly], unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

After receiving copies of the documents (including the property settlement agreement) that had been signed by the husband, Melchior told the husband's attorney that he would not file with the Court any of the documents the husband had signed without first obtaining his lawyer's approval or unless Melchior received an order from the Court announcing that opposing counsel was no longer serving as the husband's attorney. Thereafter, after giving notice to husband's attorney and at the specific direction of his client, Melchior filed a motion for order acknowledging as valid and enforceable the parties' settlement agreement. Melchior's conduct in this respect violated Rule 8.4(d), which provides, "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."

Melchior stipulated to the public censure and agreed to pay an administrative fee and certain costs of the disciplinary action to the Wyoming, State Bar.

## CONCLUSIONS OF LAW

15. Standard 2.5 of the ABA Standards for Imposing Lawyer Sanctions states, "Reprimand, also known as censure or public censure, is a form of public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice." The commentary to Standard 2.5 discusses the proper circumstances in which to impose a public censure as well as the rationale behind this form of discipline:

Publicity enhances the effect of the discipline and emphasizes the concern of the court with all lawyer misconduct, not only serious ethical violations. A reprimand is appropriate in cases where the lawyer's conduct, although violating ethical standards, is not serious enough to warrant

suspension or disbarment. * * * A reprimand serves the useful purpose of identifying lawyers who have violated ethical standards, and, if accompanied by a published opinion, educates members of the bar as to these standards.

16. Standard 3.0 provides, "In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:"

(a) the duty violated;

(b) the lawyer's mental state; and

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

17. Misconduct of the sort engaged in by Respondent is addressed in Standard 6.2, "Abuse of the Legal Process."

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving * * * failure to obey any obligation under the rules of the tribunal * * *:

6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.

6.22 Suspension is appropriate when a lawyer knows that he is violating a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

6.23 Reprimand [i.e., public censure] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

6.24 Admonition [i.e., private reprimand] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

18. ABA Standards for Imposing Lawyer Sanctions 9.1 provides for consideration of aggravating and mitigating circumstances in deciding on an appropriate sanction. Section 911 defines aggravating circumstances as "any consideration, or factors that may justify an increase in the degree of discipline to be imposed." Section 9.31 defines mitigating circumstances as "any considerations, or factors that may justify a reduction in the degree of discipline to be imposed."

a. Applicable aggravating factors are:

i. Section 9.22(i)–substantial experience in the practice of law. Respondent was first admitted to practice in Wyoming in 1991; and

ii. Section 9.22(d)–multiple offenses.

b. Applicable mitigating factors are:

i. Section 932(a)–absence of prior disciplinary record;

ii. Section 9.32(b)–absence of a dishonest or selfish motive;

iii. Section 932(e)–full and free disclosure to disciplinary board and cooperative attitude toward proceedings; and

iv. Section 9.32(1)–remorse.

## RECOMMENDATION TO THE SUPREME COURT OF WYOMING

11. As an appropriate sanction for his violations of Rules 4.2 and 8.4(d) of the Wyoming Rules of Professional Conduct, the Board of Professional Responsibility recommends that Respondent: (1) receive a public censure; and (2) be ordered to pay the administrative fee in the amount of $500.00 and administrative costs of $2,372.89 within ten days of approval of the report and recommendation by the Wyoming Supreme Court.

Dated this 21st day of December 2011.

/s/ Francis E. Stevens
Francis E. Stevens, Chair
Board of Professional Responsibility
Wyoming State Bar

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of this **Report and Recommendation** was mailed by United States Mail, postage prepaid, on December 22, 2011 to the following:

Keith S. Burron

Associated Legal Group, LLC

1807 Capitol Avenue, Suite 203

Cheyenne, WY 82001

Respondent Counsel

D. Stephen Melchior

Melchior Law Firm, P.C.

2010 Warren Avenue

Cheyenne, WY 82001

Deborah Ford Mincer

Attorney at Law

P.O. Box 2157

Cheyenne, WY 83003

Complainant

and a copy was hand delivered to:

Mark W. Gifford, Bar Counsel

Wyoming State Bar

P.O. Box 109

Cheyenne, WY 82003

/s/ Patricia F. Becklinger
Patricia Becklinger, Clerk
Board of Professional Responsibility